Good morning, your honors. My name is Brian Reyna. I'm with the Office of the State Appellate Defender, representing Antonio Morris, the appellant. Good morning, your honors. I'm Peter Fisher, an assistant state attorney on behalf of the people. Okay. Good morning, gentlemen. We have allotted approximately 30 minutes for the argument on this case. That time will be divided equally. The appellant may reserve five minutes or so for rebuttal, if you so choose. So you may proceed with that. Thank you, your honor. Before we begin, I just had a knee replacement. If I stand up, I'm not getting bored or about to leave. I'm just stretching the knee out. So please continue with your argument. Absolutely. Thank you. I would like to reserve five minutes for rebuttal. All right. Your honors, I raised four issues in the opening brief, and today, with your permission, I plan to focus on issues one and two regarding the trial court's pretrial rulings that hampered the defense from fully presenting their evidence. With respect to those rulings, the court found that if the defense called two medical experts that the state could impeach those experts with Antonio Morris' suppressed statement. This ruling contradicted the United States Supreme Court's opinion in James v. Illinois, which holds that under no circumstances may a defendant's suppressed statement be used to impeach witnesses for the defense other than the defendant. The ruling was also based on factual findings that were simply wrong. For instance, the trial judge found that he would allow this impeachment, because according to the judge, the medical experts would merely be testifying to statements that were made to them by Morris, thus allowing Morris to commit perjury by proxy. How do you get around the Waver argument? Your honor, in People v. Easley, the Illinois Supreme Court addressed a similar argument where the defendant on appeal wanted to challenge the trial court's ruling that his suppressed statement could be used to impeach his testimony, and the Illinois Supreme Court found that the issue was properly preserved, even though the defendant did not testify. So if the defendant didn't need to testify in that case, there's no reason for the experts to be called in this case. The fact that the judge made this ruling prior to trial puts defense counsel in the position of having to decide between essentially sabotaging the defense case by putting these experts on, or adjusting his strategy according to the ruling. So I know the state cites several cases, such as Patrick and Lucci and Whitehead. Those cases deal with Rule 609A. They're limited to those types of issues. In each of those cases, the opinions mention that the ruling that the defendant would need to have testified in those cases to preserve the issue for appeal wouldn't relate to a case that dealt with constitutional problems. Those were evidentiary rulings. What other factual dispute do you have with regard to the judge's assumptions at the time he made the ruling? One is that the testimony would be statements of the defendant to the treaters. That's our primary contention. The judge found that the experts would just get up on the stand and say something that was said by Morris to them. The defense counsel made an offer of proof. He attached documents to his motion to eliminate, to a motion for a new trial, stating that these experts would be testifying to their expert medical opinions, and that their testimony would be based on their observations of Morris. And he additionally mentioned that the radiologist who took the x-rays has never even met Morris. The other doctor would be testifying that he observed Morris in a brace. These are not statements that Morris made. And that's our primary contention. Doesn't that argument in some way cut in the other direction because the case law makes a distinction between factual determinations and legal determinations. And I think the law, to some extent, says if it's simply a legal determination that can be made prior to the trial, then that's something that the reviewing courts can look at, and it's not something that's speculative in the instance where the defendant doesn't testify. But if it's a factual dispute, then you need the defendant's testimony to see how far the parties try to go with the defendant's testimony. And the judge's ruling is subject to revision at any time, and then the appellate court can look down and say, you know, now we have a record and we see that it was just statements of the defendant, or it wasn't just statements of the defendant, it was x-rays or diagnoses. And isn't that why there's this general rule that the defendant should testify in order to preserve this issue, so that we know what the issue is? Well, that rule, again, there is not a general rule that the defendant should testify to preserve this issue. That holding was from Patrick Phillips, a completely different issue, and easily the court expressly held that the defendant did not need to testify to preserve the issue. I would mention also that the defense attorney, as an officer of the court, was representing what the experts would testify to. So it's not speculative in terms of whether they would be testifying to statements made by Morris or not. Counsel attached several documents, x-ray results, to his offer of proof to the motion to a new trial, and stated that these experts would be testifying to their expert medical opinions, that they would testify that Morris had a limitation on his ability to move his shoulder. And there's really not a legal determination to be made about whether that is accurate or not. The defense attorney represented it was accurate in court, and there's really no reason to doubt those representations. Well, your argument is that the trial judge made a definitive finding as opposed to what you're arguing they made a definitive finding. But theoretically, the trial judge could have changed his mind by the time the time for his ruling would come into play. I mean, by the time the time for the impeaching testimony would come in. The trial judge could have said, well, you know, I changed my mind. Well, the judge didn't indicate that he would change his mind at all. The defense counsel asked the judge very specifically, I need to know, I need a ruling here, because if you rule against me, I can't call these witnesses. Counsel couldn't have, the prejudicial effect of an incriminating statement, it's highly prejudicial. It's difficult evidence to overcome. And counsel knowing that the court explicitly held, I will let the state introduce these statements. There's no speculation about whether the state would introduce the statements.  Defense had at that point to adjust its strategy and put his client in a better position by making sure these statements wouldn't come in. But didn't this whole argument basically harm this? Because under the law of accountability, several witnesses put your client there. And whether he actually threw this bar at the deceit or not, under law of accountability, he's there anyway. I mean, he's running behind his own Bronco, is that right? They're chasing this guy down the alley, and he winds up dead. Well, Your Honor, the evidence is very confusing in this case. And having heard this medical testimony, it's not overwhelming identification evidence, and it could have been rejected by the jury. All of the witnesses that put Morris at the scene had very strong motives to implicate him. The one neutral witness, Mr. Rucker, testified that he can't see. Well, they had more than just him. They had his vehicle, too. That kind of tied it up. Yes. The vehicle was at the scene. But there are two vehicles. One was a Ford Bronco. The other was a Chevy. The Chevy belonged to one of the participants, was driven by one of the participant's girlfriends, was loaned to him by the girlfriend, was then driven by another participant. And the same could be true of the Bronco. We don't know that Morris was the driver of the Bronco based on the identification testimony alone. But you feel that harmless error analysis is appropriate in this case? Well, Your Honor, initially I would argue that this is a reversible error, that Morris did not get to put on his full defense. He has the right to confront the evidence against him, and was really put in a position where he's being denied his Fifth Amendment right not to testify. Based on the judge's ruling, the decision of whether his own testimony would be used against him was in the hands of his attorney, not him. However, if you apply harmless error analysis, I would argue that the State's evidence is not overwhelming and that a jury could have rejected this identification testimony. There was only one witness, and that was Graves, that actually testified that Morris threw a pole. And that evidence, Morris was not allowed to confront with this medical testimony that would have undermined that evidence. Morris said he threw the pole. I'm sorry? Morris said he threw the pole. That didn't come into trial. No, but he did say he threw the pole. In the statement, yes, yes. It doesn't easily, though, it doesn't easily say that even in the face of this type of error, that a harmless error analysis is appropriate. Isn't that what they did in each case? Easily applied a harmless error analysis. That's correct, Your Honor. Another reason this would be not a harmless error, that you couldn't say this was harmless beyond a reasonable doubt, is because these motivated witnesses all testified that Morris struck the decedent in the body with objects, there were no marks on the decedent's body. All of this testimony had strong, large holes in it, and had the jury heard a full defense theory that could have confronted each aspect of the testimony, it can't be said that the jury would not have rejected this evidence. It's worth mentioning as well that the police had evidence, and as did the prosecutors, that some of the participants were involved that ultimately were not charged, and the jury similarly could have rejected this evidence in terms of an accountability theory, and decided that Morris was not involved. I also know, Your Honor, that the court additionally, during the defense case, did not allow counsel to rehabilitate a witness after the state introduced evidence that that witness had implicated Morris at a prior proceeding. During Wallace's testimony, he stated he did not remember if Morris was at the scene or not. On cross-examination, the state introduced evidence that while Wallace accepted a plea for second-degree murder, that he implicated Morris in court, and defense counsel could not tell the jury that Wallace received, you know, pled to a lesser crime and received a lesser sentence than he might have had he not made those statements. And motive evidence is always relevant. There's nothing in the record, and there was no representation made, that the condition of Wallace's plea, that it was a condition of Wallace's plea that he agree to the facts. Was there? That's correct, Your Honor. Was he allowed to ask Wallace that very question? Yes, Wallace testified that he did not, that his plea was not made in exchange for a promise for testimony, but at the same time, Wallace admitted hitting this decedent in the head with a baseball bat, and did not get, was not convicted of first-degree murder. And that's simply whether there was actually a deal there should have been a question for the jury, or at least something the jury should have heard to determine how reliable that testimony is. It was not testimony that was given independently. All right. Is there no further questions, Your Honor? Five minutes. Thank you very much. Good morning. Good morning. You may please the Court. Turning to the first issue, the first thing I would note is that the, I think we can say from the record that the defense counsel never even spoke to these so-called experts. And the reason I say that is when he was making his arguments, he submits three pieces of paper. The first is an EMT report from the jail eight days after the murder. It's not from a doctor. It's from a paramedic. And that basically says that the defendant related a history of shoulder problems, chronic shoulder dislocation. Then we have an X-ray report a month after, which just, and the X-ray itself, which indicates some sort of a damage to the shoulder. And then there's a third piece of paper, which is a printout from an Internet site, which explains what Hill Sachs deformity is. And I would assert that had Mr. Decker actually spoken to this radiologist or to an actual expert, he wouldn't have had to include an Internet piece of paper saying what Hill Sachs was. The doctor would have said that. This is not an offer of proof where Mr. Decker stood up and said the doctors are going to say the following things. Our concern here is not the sufficiency of the offer of proof or whether he should have put forth this or not. Our concern here is that we have a statement which the trial court held was taken in violation of this defendant's constitutional rights, and you're admitting it to impeach a third witness, a third party. And does that come up against the James case? That's really where we are. There's an argument, yes, that it would come up against the James case. There's also an argument that the James case should not apply to this situation, that there should be an evolution in the law. You want us to overrule the U.S. Supreme Court? No, but I think what the attorneys were arguing was a legitimate, certainly there's a strongly worded dissent in James by four justices of the United States Supreme Court, which wholeheartedly accepts the perjury by proxy argument. What we don't know here is the dissent. Until a majority of that court changes its mind, that's the law of the land. Well, even if that's true, the defendant still has to put the witnesses on. And the most recent pronouncement by the Illinois Supreme Court is Patrick Phillips, and in Phillips they talk about Whitehead. And yes, Phillips was a Montgomery case, and one of the issues in Whitehead was Montgomery, but one of the issues was also not Montgomery. One of the issues was also keeping a psychiatrist off the stand, because as you recall in what happened in Whitehead, the defendant wants to put on an insanity defense. Now, he has a constitutional right to present a defense, put on witnesses on behalf of that defense. He wants to put on a psychiatrist, but the judge in that case says, I'm going to let the state get into the fact that when the defendant was talking to the psychiatrist, he mentioned some other attacks on some other girls, and therefore the defendant didn't call the psychiatrist, didn't take the stand, and didn't present that insanity defense. And the Illinois Supreme Court says you've got to do that. You've got to put those people on if you want to raise this issue. Now, there's another constitutional issue, the issue of being able to put a witness on and putting a defense on. And that Whitehead case, although it proceeded easily, was cited approvingly and at length in Phillips, which came after Easley. And Phillips doesn't talk about Easley itself. So the reason I got into the offer of proof, Your Honors, because we don't know what these witnesses are going to say. Mr. Decker said they would be making some sort of a pronouncement. Well, Phillips is a little bit different because Phillips is a situation where the judge says, I don't know what I'm going to do. Counsel argues that in this case we have a definitive ruling to the extent it could be definitive about what he was going to do. But you had a definitive ruling in Whitehead, too. And Whitehead is cited approvingly in Phillips. Phillips relies on Whitehead. So I don't think that's a distinction that actually holds sway in this case. Again, back to the offer of proof, we don't know. First of all, there's only one person that would really be an expert entitled to make an opinion. If an opinion was going to be given, it would have been by the radiologist. So, of course, as defense admits, never spoke to, never saw the defendant. We don't know if they're going to say he could throw underhanded. We don't know what hand he threw with. We don't know where they're getting. Clearly the information on the EMT report had to have come from the defendant. But see, here's the point. If theoretically this statement of the defendant is going to be done, and it's only admissible if I understand from limited purpose of impeachment, aren't we kind of in the back door saying, well, we're going to use it as substantive evidence that he actually threw it when the doctor says, in my opinion, he couldn't have used this arm? You're basically trying to get that in, basically, in back door as substantive evidence that he did something. Well, when their claim is that he can't do something, and we have... Well, I want to hear the rest of your argument with regard to the offer of proof. Would you finish that, please? Oh, sure. The point is that Mr. Decker got up there. He didn't say what the witnesses were going to say. He made some sort of general statement about they're going to opine that he couldn't do these things. I don't know how he would have gotten there. And that's part of the problem. You can't tell from this record how they would have gotten to anything that would have been helpful to the defense. So I don't know how you can evaluate the prejudice unless we have that. The offer of proof is very meager. As I was saying earlier, it's pretty apparent that the defense attorney never spoke to these doctors. I don't know how they could have even gotten an opinion out. And had they... My sense is that had they appeared, the states would have still asked for an offer of proof as to what they're going to say. I mean, if he has experts, he's got to file their or tell us what the opinions are going to be. And he doesn't do that. He doesn't do anything specific. He just says they're going to testify. And again, the EMT report talks about history of dislocation. That clearly was from something the defendant himself said. So we don't have enough information to evaluate this, which is the whole reason why in Patrick Phillips and Whitehead, the Supreme Court, and in Luce, the Supreme Court says, you know, you can't have it both ways. You can't throw this out there and then use it as a shield. You've got to... If you're going to make this argument and you're going to say that you were deprived of something, we've got to know what you were deprived of. What evidence were you going to put in? And I would assert, based on this record, we don't know what these people were going to say with enough specificity to judge whether the judge was correct or not. And plus, there are other ways that this could come up. Traditionally, when you're cross-examining an expert, one of the things, and I cite the Pash case, and it's kind of black-litter law, where you ask the expert, well, if you were aware of the following, would that change your opinion? And one of the things that we pointed out is being able to show the expert the tape of the defendant saying, I threw the barbell or the pole. That certainly is a legitimate cross-examination technique. Well, that's an interesting question, and I think that kind of gets us away from the waiver thing and it gets us into the James analysis. And I saw that you did make that statement in your brief, that you should be allowed to confront the expert witnesses to see if it changes their opinion. So the question that immediately jumped into my mind is, is there any authority, or maybe if there isn't any authority on it, what's the argument? Is there any authority for the proposition that you can use a suppressed statement  I don't know of any, Your Honor, but I think it's important to note in this instance, and it's also important to talk about Eesley, because this was a statement that was not suppressed because it was involuntary. The finding of the court in Eesley was that it was an involuntary statement. There was this elaborate ruse that they concocted to talk to this guy in prison, and they said this was an involuntary statement. In this case, Judge Gaynor specifically found that it was not an involuntary statement. He found that this statement was suppressed for what he called a technical violation or a lazy violation of Miranda. The guy got his Miranda rights. The Miranda rights had a defect in that the detective didn't say, when he was telling the defendant that he had a right to counsel, and telling the defendant that he had a right to counsel, if he couldn't afford one, he didn't say, and you have a right to have counsel present here for questioning. Well, surely if it was an involuntary statement, we wouldn't have this Harris discussion. But since we know that it's not an involuntary statement, we get into this discussion of Harris, and then we get into James. You actually started to say something at the beginning of your argument, and maybe we can talk about that now. Are you saying that you're asking the appellate court to take a further step with regard to Harris and James and find another Harris exception that deals with, what, medical personnel that should be confronted by suppressed statements, or where are you asking us to go? I mean, the James case said we're not going to apply Harris to all defense witnesses, because obviously you would keep, by doing that, no defense witness would be able to get on the stand and say anything without the defendant's statements. Are you asking us to find, if we put waiver aside for a minute, are you asking us to find that there's another Harris exception that has to do with expert testimony? Insofar as expert testimony was relying specifically on the statements of the defendant, yes. That's what we would be asking. Only the statements of the defendant, or the objective evidence that they have from the radiologist? I would say only the statements of the defendant. I would say, because in this case, we don't know. So if the doctor did not use any of the statements of the defendant, then you would say the impeaching statement should not come in? I would say the case would certainly be less strong for the evidence. But you don't know if the defendant even talked to the doctors? Well, I know he didn't talk to the doctors. He talked to a paramedic at the jail. I know he didn't talk to, well, I don't know if he talked to somebody when they were taking his x-ray or not. I mean, we don't know any of that. Trust me, the radiologist wasn't in there when they were taking the x-ray. Yeah. Unfortunately, I've been in that situation myself, Your Honor. So I don't think there's anything in here to say that the defendant spoke to the radiologist. So we just have a statement made to the paramedic. And I don't know that the paramedic could have ever been qualified to give an opinion to begin with, certainly if the opinion is going to be. And then, again, that raises some more questions as to whether this evidence could have ever come in, which, again, comes back to the question of whether or not the offer of proof was sufficient. And it really wasn't in this case. And that's part of the reason that the Supreme Court in Whitehead and Patrick Phillips required put the witnesses on. Let's see what happens. Let's see how the cross-examination goes. Let's see if the witness is confronted with his taped testimony. Let's see what things come out. And then we can make a full ruling on the case. So you'd ask us to expand Harris to situations where the defendant has made statements to a third person, such as examining a physician, to avoid this perjury by proxy thing. But you're not really asking us to expand Harris to a situation where you're talking about objective X-ray examinations and things like that. Not specifically in terms of putting the statement in, but I still think we should be allowed to cross-examine an expert. Again, it depends on what the expert is saying. I mean, if the paramedic gets on and says, Which we don't know. Yeah, the paramedic says, The defendant told me he can't throw. Or he's been like this for ten years. Or he's been like this. We don't even know the dates when these things happen. I mean, the first thing is the EMT reports eight days after the murder. The X-ray is a month after the murder. So we don't know the relevant times. We don't know when the defendant. History of shoulder dislocation could be yesterday. It could be I have a chronic dislocation over time. Even the Hillsex definition from the website says you can't tell from the thing that's talked about in the X-ray whether or not this is a chronic condition or a single condition because the bone can be shaved down or the gap can appear after one incident. So, again, the problem is we don't know. And then that's why you have to make these offers of proof. What exactly was the state's motion in this regard, and what did the judge rule? Well, when the defense indicated it was going to call these witnesses, we made a motion to be able to impeach those witnesses with the statements of the defendant. Based on our assumption, based on that they would be relaying information that came from the defendant himself. So, even though this offer of proof was allegedly incomplete, the real question is whether this statement, we have a circumstance where the defendant's suppressed statement can be used to, I don't know if you call it impeach, is it really impeachment here when someone testifies for medical records? It's refutation, rebuttal. I believe it is impeachment, but I think it is rebuttal testimony. It can be impeachment, again, in terms of when the doctor is on the stand and the doctor is asked if you are given the following set of circumstances, i.e., the defendant's statement where he says he did it, would that change your opinion? And if the doctor says no, I think that's an impeaching situation because generally if a doctor says something like that, I would assume the jury would give it less credence. You know, when the defendant himself says I can throw and the doctor says he can't, the doctor doesn't look so good. Well, speaking from, looking from just a purely philosophical viewpoint here, you know, the suppression of evidence, these rules, the fruit of the poison tree have been with us for a very, very long time. And, you know, the exceptions have popped up. We're going to allow these statements taken if something dastardly happens, for example, like a defendant lies on the stand. Here we have a situation where we, you know, and when this lie happens, that's enough. You know, it's reviling to allow someone to testify falsely, and we're going to allow a statement which otherwise would not be admitted to come in. Here we have a situation where we don't have perhaps perjury by a witness, but we have him relating medical records and possibly an opinion. Is that state of facts reviling enough to allow us to throw away the 50 years and allow a statement taken in violation of a defendant's constitutional rights to come in? Is that enough to make us revoke, you know, to ignore those rules? Two things. First of all, the exclusionary rule is intended to preclude and prevent and deter misconduct. I think it's arguable here that this wasn't misconduct on the part of police. This wasn't a ruse. This was a mistake. The judge found it to be an honest mistake. Well, he's supposed to be told that he has a right to have a lawyer there. Yes, he is, but again, the exclusionary rule is to deter misconduct, not just to keep evidence. I mean, we all admit that very often good evidence is excluded, reliable evidence is excluded under the exclusionary rule. That's the price we pay, but we pay for it because there's been misconduct by the police, and on the spectrum of misconduct, I would argue this isn't even misconduct. This is a mistake. It's an honest mistake. It's a technical violation as the judge saw. I think that should weigh in the balance as well. And then when we're talking about what was happening here, I mean, the whole notion of perjury by proxy, it is an offensive concept that the defendant can pull a fast one by, if in fact these are the facts, the defendant is lying about whether he can throw something or not. But that's not it. He's not. Well, if he is. Well, is someone else? Okay. That's part of the question. So if he is lying about it, it's unfair, and I would say reviling to the system, that he is allowed to use another person to say what he's not going to get on the stand and say himself. I mean, I think that's part of what the four justices in that Supreme Court case were talking about. And they did it in very strong language. They were very offended by this whole notion that you could get in through the back door, but you're not going to get in through the front door. So I think it is a reviling situation, and I think it is one that cries out for action. And, again, given the fact that we're talking about a continuum. But that only answers half of our question, because we have these two things. We have the statements of the defendant to these examiners, but we also have, as Justice Taylor mentioned, the subjective evidence that supposedly this doctor is going to testify to this X-ray. And so this perjury by proxy thing, which I agree is troublesome, and there's plenty of case law that says that you can't hide behind these suppression motions to mislead a jury. And so the question is, is the jury being misled? And I think that's a real question. If the doctors are allowed to say he can't throw this thing and there's a statement made by the guy that says, I threw it, isn't the jury being misled? That's a question. Absolutely. But with regard to the objective testimony about, like, for example, the X-ray, my question is, you know, is there some way to massage Harris and James to say that that kind of testimony is not, for example, going back to when they talked in James about the reason they didn't want to expand it is because the balance that they're trying to strike is they don't want to encourage police misconduct. And if you open this up to all witnesses, then basically what you're saying to the police, you know, there would be a benefit to your misconduct. You're going to keep the defense off the stand. My question is, can you make an argument that it's not foreseeable to the police officer on the street that his constitutional violation is going to somehow keep some examining physician off the stand? No, and, you know, in this case, again, if you're looking at foreseeability, had the police officer not slipped up and left out a couple of words, the defendant still would have said the same things. I mean, he didn't pull a fast one on the defendant and get the defendant to confess. But the defendant understood, and the judge found the defendant understood what was being said to him. He understood his rights and he waived his rights. It's just that there was a technical defect in the rights. I mean, I understand your question. Let's say, in a different case, the only thing the defense presents is the X-ray. Obviously, I think there's relevance problems with that. Without further testimony, if you just have the X-ray, what's the significance of it? The doctor would then have to come forward with some sort of a statement. Let's say the radiologist testifies. He has the X-ray, and the radiologist testifies, I've examined the X-ray. I don't think he could throw the pole. Okay. With that arm, he couldn't have thrown the pole. Again, we don't know what arm he's – the witnesses aren't – there's only one witness that even said he threw the pole. Remember, there's three witnesses that identify him in one way or another as being involved in the beating, and only one of the three says the pole. So this wasn't the major portion of the case. Let's say this whole thing never happened. The pole part isn't the be-all and end-all. Yeah, but if it comes in, it's the be-all and end-all. I mean, if his statement, I threw the pole, comes in, it's going to hurt. Well, it would have hurt, yes. But, again, the problem is we don't know what this radiologist would have said or could have said that would have been relevant. For all we know, he just would have said, it's a defect in the shoulder. I can't tell you whether or not it would affect his ability to throw. I can't tell you any of those things. Because the lawyer never tells us that he spoke to him and that the witness would say that. And before the witness would have actually taken the stand, they would have had to flesh that out further. Well, let me ask you this. Suppose someone would have come in and gave the opinion. I don't think he could have thrown this pole. Okay. How is that different from James where the question was, what color was his hair on the day of the offense? Did he change it? Was it red or black? And now his statement says, I dyed it. And they didn't allow that in. And the court says, well, although there's a difference in what the witness has said and what this defendant's statement explains it, we're not going to let that in. And how is that different from our case where if a medical expert said he couldn't have thrown it, how is that different than James? Well, again, the problem or the fact is that you used the word if several times there. And, again, we just don't know. There wasn't just the x-ray here. It was also the paramedics report. It was the sum of those two things. And because we don't know what they were going to say, we're left at the same place. But the if is the only way to get this statement in. Because if they didn't testify he couldn't throw the pole, there would be no reason for the defendant. So the if is what really ties the use of this statement. So if we just assume for the worst case scenario, what is this expert, for the best possible position for your argument, the expert says he couldn't throw a pole for the last 10 years, that's different than what his statement, how is that different from James where the question was red hair or black hair on the date of the offense? Even though it's different, how is that different? How do we get a different outcome in this case? Well, I think, again, it goes back to waiver as opposed to overturning James. And although we've offered a way, as Justice Palmer indicates, to deal with that, I still think in terms of cross-examining the statement would still be explored. And the problem is because there was no offer of proof and because the experts, normally in a case, the experts have to, you have to turn over their opinions and make those experts available for the other side and the other side is going to talk to them and ask them things and show them the video and all these other things. But none of that happened here. We didn't even come close to actually calling these experts. You know, the case law loose and white head, you know, they talk about the possibility that the judge may change his mind. And it just struck me. He did here. He did hear the motion to suppress. He did with regard to the motion to suppress, that's true, which is, it's always good that a judge will change his or her mind when required. And he did the right thing here. You know, he was, he made this statement, he made a ruling, and then he was asked, and Mr. Decker was dogged in trying to get him to reconsider that. And he did reconsider that. He changed his mind and he suppressed the statement. So, I mean, there's another instance of, you know, the judge here, if he hears the evidence and he hears how it goes in, he could say, there's no reason for the state to be allowed to do that in this instance. Yeah, so my question would be, well, let's say, let's take the other hypothetical if situation, because we talked about what the worst case scenario would be. What if the expert, as you said, there's no expert disclosure. There's no opinion that's been disclosed. And let's say the witness gets on the stand and he says, yeah, I looked at this X-ray and I see this thing in the shoulder. Do you have an opinion about whether or not he could have thrown that pole? He goes, and let's say he says, I don't have an opinion. I can't tell from this. Okay? So then the state may, and the case law recognizes this too, the state may step back and say, we're done. We don't have anything else judged. Right. You know? And the case law recognizes that that can happen. And that's why the evidence has to come up on the stand so that the judge, so that, one, the state has the opportunity to step away, or, two, that the judge has the opportunity to change his mind. Because the judge could say, you know, Judge Gaynor could have said, well, if he doesn't have an opinion, I'm not letting this other stuff in. It's not worth it. And then the thing goes away. Well, in fact, you could probably strike the whole thing, because I don't know what relevance it has. And the case law recognizes that potential, doesn't it? Exactly. I'm searching for the case, but. Well, I mean, Phillips talks about, and Whitehead talked about, you know, we don't know what would have happened had the witness taken the stand, whether the judge would have actually allowed the state to impeach with prior convictions at that point or not. And that dovetails into your problem that you don't have enough information. Absolutely. It all keeps coming back to the same thing. In any event, Your Honors, turning to the second issue, what happened in this case is that when the co-defendant's counsel was going to put on Laron Wallace, before he testified, he said, I'd like to be able to ask him about his plea of second degree to this case. He was originally one of the charged defendants in this case. The record seems to indicate that, I think, one of the prosecutors at one point says, you know, the reason we had to give him the second degree was because we had a witness problem and he was demanding, and we had to get something out of this. So, I mean, that's the reason that all this happened now. Generally, you would not disclose all that to a jury, obviously. The concern of the state and the judge at that point is, you know, what relevance does it have when you call the witness that the state gave this person the opportunity to plead to second degree murder? You know, the Davis v. Alaska situation is not present in these instances where you don't call the witness yourself. Those situations, certainly if we had called Mr. Wallace, as we did with Mr. Graves, when Graves took the stand, we got into an extensive discussion and the defense was allowed to go into at length the fact that Graves pled to a lesser charge of conspiracy, got 14 years. We talked about being put up at the witness quarters over at the jail and the special, you know, he got radios and, you know, the things that witnesses often get. And, you know, he got better food. And so these things were all inquired into as they probably should be. But when it came to Leron Wallace, and the defense argued at that point just, well, it shows his bias. And they kept saying it shows his bias. And the bias to what? You're calling him as the witness. And so that the normal rules, again, would not apply. Now, Mr. Wallace got on the stand and he basically said he was there and he didn't remember who else was there. The defendant's car was there. And then in cross-examination he did say, yeah, the defendant was there. I saw him there and I saw Thomas there. And then it was only after that that then the state asked him, well, didn't you talk about certain facts? So this is not your traditional Davis v. Alaska type situation. And, therefore, what the court wanted to do and what the state was asking the court to do is to keep the implication from being out there that the state or the judge or someone believed that this case was anything less than a first-degree murder case because this other guy got second-degree murder. And, therefore, you should consider that. And the defense disavowed any intention to do that. But the implication certainly would have been there that, well, you know, this guy, you know, it's only second-degree. And that's what the state really thinks it is because that's what they gave him. So, Your Honors, for the reasons that we've stated here today and in our briefs, we'd ask that you affirm the defendant's conviction and sentence. Thank you. Thank you. Mr. Reyna? If I might. Can you answer Justice Palmer's question? Couldn't the judge have changed his mind once all this stuff come out? Isn't that why they're required to let things go forward and proceed on their own life? Your Honor, the judge could not have changed his mind here. The defense had to plan his strategy. And he specifically asked the judge for the ruling. The judge gave him a ruling. It was pointed out by opposing counsel that the judge changed his ruling on the suppression motion, but there was a change in the law that prompted that change in the ruling. There's no change in the law. James was the case that applied before the judge's ruling and after in regard to whether this evidence could have come in for impeachment. Additionally, counsel filed an emergency motion asking to take the deposition of Dr. Jara. Presumably because he had spoken to him, he learned that he was going to be out of the country. And he told the court he needed to have his deposition so that he could fully prepare the defense. And once the court made its ruling, the parties found and the court agreed that this was moot, not even giving the defense a chance to prepare the defense. So even if suddenly in the middle of trial if the judge had changed his mind, the defense wouldn't have been prepared because they were denied the opportunity to investigate these witnesses based on the judge's ruling. Well, the judge didn't rule that he couldn't take his deposition. No, he didn't rule he couldn't take his deposition. What happened was Decker just gave up. You know, Decker made the ruling. He did not give up, Your Honor. After the ruling insisted that the ruling was in contradiction to support court law, he said that it becomes moot based on the ruling that I would like to interview these witnesses and put this evidence on, and if you're not letting me, then I, you know, I can't do it. And the judge didn't say, well, why don't you interview the witnesses? Maybe I'll change my mind. The judge said, it's over. It's done. Counsel complained about it in the motion for a new trial. He did not give up on this issue. Regarding the forfeiture issue, Whitehead simply did not involve the admission of a defendant's press statement against other defense witnesses. It's not applicable. Counsel pointed out that Phillips doesn't mention easily. Of course it doesn't. They're not in the same area of law. Easily applies to a situation such as this one where a defendant's challenging a court's ruling that his press statement can be used for impeachment. Phillips doesn't deal with that. I would also just briefly like to address the offer of proof. The offer of proof was detailed and clearly alerted the court as to the purpose and materiality of the sought-after testimony. The court didn't have any questions about what the doctors would testify to, and it's not speculative. The doctor would testify that, based on his examination, he found a chronic shoulder deformity that would cause limitations in what Morris could do with the shoulder. Both parties were entitled to have an opportunity to explore those limitations in front of the jury so the jury could make an informed decision about whether Morris could have done what he was accused of doing. The court didn't ask for a more specific offer of proof. Again, the judge didn't say, go ahead and talk to Dr. Jara more. The court said, I will allow the statement in. If there are no further questions on the first issue, I would just have a few brief points on the second issue. Regarding the second issue, the circumstances of a witness's prior statement are always relevant to their motives for making the statement. This is not some kind of limitation that only applies to state's witnesses. The judge misunderstood when he made this ruling the reason for the counsel wanting to elicit this evidence, finding that counsel wouldn't be able to argue to the jury that Morris should be convicted of secondary murder. Counsel stated on the record that wasn't his intention. There was no secondary murder instruction. I did cite a case in the opening brief, I believe it's Bibb's, that is the same situation. Actually, it's in the reply, excuse me, that a defense witness was impeached with a prior statement and the court found that the circumstances of that statement were relevant to the jury's consideration of the credibility of the statement. So counsel was allowed to elicit evidence in which the statement was made, and the court held that that type of evidence is always relevant. If there are no further questions, we'd ask you to reverse Morris' conviction and remand his case for a new trial. The trial judge's ruling is in contradiction to existing Supreme Court law, and a new trial is warranted. Thank you very much. Thank you. The case was well-argued and well-briefed. I think we all enjoyed it, and we'll continue to issue in due course. Thank you. Thank you, Your Honor.